IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>TROY M. ORTMEIER,<br><br>                Defendant. | 8:13-CR-57<br><br>TENTATIVE FINDINGS |

      The Court has received the revised presentence investigation report (RPSR) in this case. The defendant has objected to the RPSR in a sentencing statement (filing 32), and has also filed a motion for variance (filing 33).

      IT IS ORDERED:

1.    The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005), and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

   (a)    give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

   (b)    resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

   (c)    impose upon the United States the burden of proof on all Guidelines enhancements;

   (d)    impose upon the defendant the burden of proof on all Guidelines mitigators;

   (e)    depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

   (f)    in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is

>  a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2. The defendant objects to the RPSR's two-level increase in the offense level for "abus[ing] a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. Under this Guideline, the government must prove two elements by a preponderance of the evidence in order for the abuse of trust enhancement to apply: (1) the defendant occupied a position of private trust, and (2) the defendant used this position in a manner that significantly facilitated the commission or concealment of the offense. *United States v. Miell*, 661 F.3d 995, 998 (8th Cir. 2011).

   The facts as set forth in the RPSR, briefly summarized, are that the victim is a real estate brokerage and that the defendant managed the business pursuant to a "broker-sales associate contract" and a "real estate broker agreement." RPSR at 3. He was entitled to receive a percentage of the commissions for transactions on which he worked, and those generated annually by the business, and permitted to draw a monthly advance against payments due to him. RPSR at 3. But the defendant began to divert funds he had not earned. RPSR at 4. To cover up what he was doing, the defendant made false entries in the bookkeeping system and sent false monthly reports to the owners of the business. RPSR at 4. And aside from the monthly reports that the defendant falsified, it "does not appear there was any direct oversight of his activities on behalf of the business." RPSR at 9.

   The defendant does not (at least in his sentencing statement) seem to be disputing the facts as stated in the RPSR. Rather, he seems to be arguing about the legal significance of those facts. His argument is twofold. First, the defendant contends that his relationship with the business was "standard and contained no provisions entrusting [him] with responsibilities above and beyond those that might be given to anyone else entering into such an agreement." Filing 32 at 2.

   It is true that, as a matter of law, ordinary commercial relationships do not constitute a trust relationship sufficient to invoke the position of trust enhancement. *United States v. Jenkins*, 578 F.3d 745, 753 (8th Cir. 2009); *United States v. Baker*, 200 F.3d 558, 563-64 (8th Cir. 2000). But what distinguishes frauds based on commercial relationships where § 3B1.3 should apply from those where it should not is whether the defendant has broad discretion to act on behalf of the victim and

- 2 -

the victim believes that the defendant will act in the victim's best interest. If not, then the enhancement should not be applied solely on the basis of a commercial arrangement. *United States v. Davuluri*, 239 F.3d 902, 909 (7th Cir. 2001). A position of private trust is characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). *Jenkins*, 578 F.3d at 752 (citing § 3B1.3 cmt. n.1).

It may be true that the defendant's relationship with the business was ordinary—but that does not mean it was not a position of trust. The defendant was contracted to *manage* the business, and such a managerial position can be both "standard" and a position of trust. Even an ordinary, low-level employee can occupy a "position of trust" where the defendant's status provides access that facilitates the fraud. *See United States v. O'Brien*, 191 Fed. Appx. 508, 509 (8th Cir. 2006). The RPSR suggests such a relationship here.

The defendant's other primary contention is that the § 3B1.3 enhancement does not apply because his fraud would have been easily detectible had the owners of the business investigated or audited its records. The implication seems to be that the defendant's position did not "facilitate[] the . . . concealment of the offense" because the offense was not well concealed. *See* filing 32 at 2. But successfully concealing fraud can hardly be a *sine qua non* for abuse of a position of trust. After all, no successfully concealed crime results in a criminal sentencing proceeding. And § 3B1.3 actually refers to a defendant's position of trust facilitating "*commission or* concealment" of the offense. (Emphasis supplied.) But more to the point, the defendant's argument appears to be premised on a misunderstanding of § 3B1.3.

The term "public or private trust" refers to a position characterized by professional or managerial discretion, whereby the offender is subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. *United States v. Moten*, 551 F.3d 763, 767 (8th Cir. 2008); *United States v. Erhart*, 415 F.3d 965, 972 (8th Cir. 2005). The abuse of trust enhancement applies only where the offender has abused discretionary authority entrusted to the defendant by the victim. *Erhart*, 415 F.3d at 972; *see United States v. Fazio*, 487 F.3d 646, 659 (8th Cir. 2007). The Court simply considers whether trust is inherent to the nature of the position. *Id.*

> "The notion of 'trust' embodied in the guideline is not the one contemplated by the ordinary dictionary concept of

- 3 -

> reliance or confidence for, in that sense, a bank trusts its tellers not to steal from the till. Rather, as used in the guideline, 'position of public or private trust' is a term of art, appropriating some of the aspects of the legal concept of a trustee or fiduciary. The lesser degree of direct supervision exercised over fiduciaries or senior employees as opposed to cashiers, and hence the greater difficulty in detecting their transgressions, may explain part, but not all, of the distinction[.] Where an individual makes himself particularly vulnerable by entrusting another with substantial authority and discretion to act on his behalf and then relies upon and defers to that person, a decision to take advantage of that trust and vulnerability is particularly abhorrent . . . .

*United States v. Hayes*, 574 F.3d 460, 479 (8th Cir. 2009) (quoting *United States v. Garrison*, 133 F.3d 831, 839 n.18 (11th Cir.1998)).

The point is that a failure to oversee every aspect of an employee's conduct is not indicative of a *lack* of trust—quite the opposite. Fraud may be difficult to detect, not because it is particularly well hidden, but because the perpetrator is entrusted to work without scrutiny. *E.g.*, *Jenkins*, 578 F.3d at 752; *United States v. Guy*, 335 Fed. Appx. 898, 899 (11th Cir. 2009); *Moten*, 551 F.3d at 767; *Fazio*, 487 F.3d at 659; *O'Brien*, 191 Fed. Appx. at 509; *Erhart*, 415 F.3d at 972; *Davuluri*, 239 F.3d at 908-09; *United States v. Wood*, 8 Fed. Appx. 588, 589 (8th Cir. 2001). Perhaps, had more control over the defendant been exercised in this case, the fraud would have been discovered—but it appears that the fraud continued as it did precisely *because* the owners trusted the defendant and the information that he provided them. *See Erhart*, 415 F.3d at 972; *see also*, *Jenkins*, 578 F.3d at 752; *Fazio*, 487 F.3d at 659.

The Eighth Circuit has explained that whether a defendant *may* occupy a position of trust is a question of law, but whether the defendant *did* is a question of fact. *Hayes*, 574 F.3d at 478 (citing *Baker*, 200 F.3d at 563-64). In this case, the Court finds as a matter of law that a real estate broker, contracted to manage a real estate brokerage under the conditions suggested by the RPSR, *may* occupy a position of private trust. *See id.* But the Court remains mindful of the fact that when the defendant objects, it is the government's burden to prove the applicability of an enhancement by a preponderance of the evidence. *See, United States v. Mustafa*, 695 F.3d 860, 862 (8th Cir. 2012); *United*

*States v. Twiggs*, 678 F.3d 671, 674 (8th Cir. 2012); *Miell*, 661 F.3d at 999. So, the Court's *tentative* finding is that the facts, as stated in the RPSR, would support imposing a two-level enhancement under § 3B1.3. But the Court will not finally determine the defendant's objection until sentencing, and the consideration of new or additional evidence, if any.

As noted above, the defendant has also filed a motion for variance, based on his lack of criminal history and personal characteristics. Filing 33. The Court will resolve that motion at sentencing.

3. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the RPSR is correct in all respects.

4. If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5. Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the RPSR may be relied upon by the Court without more.

6. Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 30th day of October, 2013.

BY THE COURT:

John M. Gerrard
United States District Judge